May it please the court? Are you ready? Are we down there? Is everyone situated? Okay. Go ahead. Good morning. My name is Marissa Conroy and I represent the appellant Salvador Gutierrez-Salinas in this case. I'd like to reserve one minute for rebuttal. Your Honors, in this case, the government criminally prosecuted Mr. Gutierrez for illegal entry. And the crux of the government's evidence was derived from Mr. Gutierrez's A-file. And it was for that reason that Mr. Gutierrez requested a jury instruction that the jury be instructed as to the differing burdens of proof between the two proceedings. This was critical for two reasons. One, it was Mr. Gutierrez's theory of the defense. And two, this is unique evidence. Judicial findings from another proceeding held under a lower standard of proof. The jury needed an instruction as to what that evidence was, how they could view it, and how they could consider it. Oftentimes in 13- Well, hasn't the Ninth Circuit repeatedly approved the use of A-files? I'm sorry? Hasn't the Ninth Circuit repeatedly approved the use of the introduction of so-called A-files in these kind of cases? Absolutely, depending on the documents. And what's different here? Well, this was his theory of the defense. You have what the government parades as a mountain of evidence. We have all these documents from an A-file. This occurred in an official proceeding, and a judge made these findings, and therefore he's guilty. But at no time- The jury was told they had to independently find beyond a reasonable doubt all the elements, including that he was an alien, right? Absolutely, but the jury didn't know what weight to give that evidence. The jury was not told that that evidence occurred under a much lower standard of proof, and that was the crux of Mr. Gutierrez's defense, was what the government presented, the documents and the information from the A-file found under clear and convincing proof, was that enough to rise to the level of proof beyond a reasonable doubt, and that's why the instruction was critical. And did you – what instruction did you submit? Mr. Gutierrez requested an instruction, and it's in the excerpt of record, basically- It would just be – I may have not remembered it. What did he request in regard to – that the prior determination was determined at a lower standard of proof? That's correct, that it was determined under a lower standard of proof, clear and convincing evidence, and that it was his defense that the government had not submitted proof beyond a reasonable doubt that he was an alien. The court did give the Ninth Circuit model instructions, did it not? The court gave the instructions regarding the elements of the advice and the instruction. The model instructions that were proposed for this kind of proceeding, correct? Correct. And so what you're suggesting is, on an abuse of discretion standard, I'm to suggest that giving the model instructions in this kind of a case is an abuse of discretion? Well, I'm suggesting that the district court erred in denying his theory of the defense instruction. That isn't my question. Please answer my question. You said that the district court gave the model instructions. The model instructions are those which have been put together by the Ninth Circuit as those instructions that should be given in this particular case, given A documents, given whatever, these are the instructions. The district court had an instruction from you which was different than the model. As I understand it, and I hope you're not suggesting it's wrong, the district court in that determination is reviewed not de novo, but for an abuse of discretion. I am trying to find the case that would suggest that because they didn't give the instructions you wanted them to give, that it was an abuse, and I couldn't find it, and I don't think you've cited it. I mean, you gave a great argument as to why you should have put your instruction in rather than some other instruction. I got those all the time when I was on the district bench. But I had to make a decision as to which instruction I would use and whether it would cover the burden that would be necessary. And I often looked at the model instructions to make that determination because the Ninth Circuit's already reviewed those and said that's a good thing to do. And I used the model. And now you're saying because I didn't adopt your instruction as the district judge, it was an abuse of my discretion. I'm having a tough time with the argument. You can go where you want to go, but I'm having a tough time with that argument because abuse of discretion is giving deference to the district court in those tough determinations on jury instructions. And then, even then, if they made a bad decision, I'd look at harmless error. So all I'm trying to do is get you to think through the standard of review you've got to hit with when you come up here. This is not what we would do. This is did the district court do it so badly that it was illogical, that there's nothing in the record which would sustain it. And I don't think we meet it. So I'm trying to get you to move on to another because I don't think that's your best argument. I guess, in summary, what I would say is it's inadequate. Taken as a whole, when you take the instructions that were given and what was requested, you look at scenarios where we enter 404B evidence. The jury's told how they can view that evidence, what they can do with it. When you have a prior conviction admitted, the jury's told what they can do with it, how they can view it. It was absolutely critical in this case that the jury knew that the majority, almost the entire government's case was under this. Well, it wasn't almost all of the case. There were authenticated records from the file, and then there was a statement he gave to the officer on the scene. But the only evidence, the only way in which the government would have had sufficient evidence to establish alienage was by bringing in those A-file documents. Mr. Gutierrez's arrest and his admission that the scene's standing alone, that's not enough. Why? Under Hernandez, this court has said an individual's confession and their manner of entry, those two alone is not enough. It's insufficient evidence of alienation. So then we go to the A-files. Correct. And the government needed that. So, I mean, essentially, since you haven't been able to cite a case, you're asking this court to hold that you have to give those instructions regarding when A-files are used. Well, I think this court's line of cases in regards to theory of defense instructions is... But isn't that always the theory of defense? I mean, any criminal case, if you said anything other than that as the, you know, you're always holding the prosecutor to the burden. But it's so rare in a criminal case that you actually bring in judicial findings from another proceeding, and that's the danger. What weight is the jury going to give that without being told what that finding was made under? But it happens, but if I'm to understand you, it happens in every case like this. So it's not rare in this type of case. Not in this particular case. And so there is, so you are asking this court to hold that because you don't have any case. Did you argue that to the jury? It was never argued by either party, so the jury was never... Why didn't you argue it? That was my question. If you don't like the evidence and you don't like what the evidence says or what it is, it seems to me it's the attorney's duty to say why the evidence does not meet the measure of burden of proof. Not just sit there. But it's the judge's job to instruct the jury on the law. Just a minute. There's a lot of evidence that comes in from a lot of different ways. Facts from a witness's testimony. Facts from another witness's testimony. Facts from another witness's testimony. The judge doesn't comment on the value of that evidence. The judge allows the lawyer to cross-examine the evidence and go after it because it's not as good as it ought to be. But then the judge instructs the jury how to weigh that evidence. Frankly, the weight is the weight the jury gives, telling them that they have to prove it beyond a reasonable doubt. I just think the danger is without the jury being made aware of what the entire government's case was based on, the jury is going to give it the same weight. They're going to assume it's a judicial finding. It was made under the same burden of proof, and that's the danger here in these cases. It was a simple theory of the defense instruction. The evidence warranted that theory of the defense instruction, and that's why Mr. Gutierrez requested it. Now, the other issue we raised was that the court was incorrect in admitting the two records of sworn statement. Those were from 2013 and 2014. Well, as to one of them, there was testimony at the trial from the translator and administrating officer, yes? That's correct. And as to the other, there was not, but it was essentially the same kind of statement, right? It wasn't a material difference between those two statements. There were not differences between the statements. So if either one of them was properly admitted, the fact that the other may have been improperly admitted would be harmless, sir, yes? I think it depends. The problem is here is if you start with the 2013 statement, and that was the officer who did testify at trial, there are a number of questions, doubts that are called into question when you review the document. She never testified at trial that she reviewed Mr. Gutierrez's answers with him and then had him sign this. So it's hard to say, did he really adopt what was on paper? You can't because she never testified these answers were read back to him for accuracy. I think it's more apparent when you look at the face of the document. There's a space there that said, I have read or have read to me X number of pages, and then it instructs the person to initial both pages, sign at the bottom, and then also note if any corrections were made. And that wasn't done. It's completely blank. I'm interested by your argument because I never saw any of your papers where you complain that the statements themselves are hearsay. I believe in the original. The only thing you ever argue about is that the translation is hearsay. Isn't that a very tough argument for you if you're not going to challenge the statements in the first place? Well, I think you have to start with the premise of we don't know whether these are even Mr. Gutierrez's statements. Well, but that's a hearsay as to the statements. That's not in your briefs. You only argue the translation is hearsay. Well, I believe we argued the entire statement is inadmissible hearsay. No, you didn't. Well, I'll look again. I did never see that. I saw the translation is hearsay, and therefore somebody needs to come in and document about the translation. But I did never hear that the statements themselves were hearsay. And that, to me, was a vital point. Well, I will double-check, but I thought the argument was. Because, as you know, things can be hearsay, but if no one objects, then they become like just any other evidence. Correct. And sometimes lawyers don't object and let things in for strategic reasons. My understanding here was the record of sworn statements, both of them, were inadmissible hearsay. And the government's argument that they were adoptive admissions is contingent on the fact of whether Mr. Gutierrez really did adopt these admissions. And the Nazemian case goes through the factors. Well, you may want to look at your brief and make sure about that. I will. Thank you very much. And I see I'll reserve the remaining time for rebuttal. Thank you. Thank you. Good morning. Good morning, Your Honors. Matthew Brim for the United States. May it please the Court that evidence at trial was properly admitted and the jury was adequately and accurately instructed. I think it's best to start where we left off with the record of sworn statements. Well, do you agree that if we would find that Gutierrez Salinas' signature is insufficient to allow admission of the second record of sworn statement, the second statement should have been excluded? No, Your Honor. I would then argue that it was admissible as a public record and it was non-testimonial. And that, although this Court has never reached that exact decision, it's compared. Do you have any evidence that something like this would be non-testimonial? What's your best case for that? My best case is more of the group of decisions that this Court has looked at to determine whether A-file documents are non-testimonial. The Court has considered the notice to appear, the notice of intent, the warrant of removal, and the warrant of intent. Yeah, but that's a lot different than a statement that someone makes that's essentially a confession or an admission. How could a confession ever be under the confrontation clause? Forget about the hearsay problem as well, but a confession to an officer is admitted as a public record? Is that what you're saying? And the confrontation clause doesn't come into play? Yes, Your Honor, and granted. That's a wild statement. I think you might want to dial that one back. I'll explain my logic, understanding that there's definitely skepticism. There are criteria. Well, I admire your bravado. I'm a little worried that you ought not spend your time on that. I don't think there's any one of the three of us who buy it. Fair enough, Your Honor, and I will take your advice. I would like to underscore a few points. One, that this very situation has already been considered by this court, and that's the Oriana Blanco decision. And that court looked at whether a document could be considered adoptive, and it said that a signed document even written by another in another's words would be adopted by a party's own if he signed it. And that signature would manifest adoption of the statement in very similar circumstances as that. But that's Oriana. I know we say it different. Or Alana Blanco. Is that it? But the reason why I want to make sure is the same case. In that case, we said except where there is a considerable language barrier and evidence does not support an inference that the form was read to the victim or that the form was a verbatim record of what signatory said. That's what you've got to get around here. Yes and no, with respect, Your Honor. The rule is ordinarily that a signature is acceptable, but as Your Honor announced or articulated. I didn't try to announce it. I just tried to read it. As Your Honor made clear, where the court said there is, quote, considered testimony of a considerable language barrier, and there was none here. In Oriana Blanco, the defendant testified that he did not understand the officer, that the translator was gone from the room for much of the interview, that he did not make the statements, and that the answers on the form were not verbatim. We have none of that here. So did the defendant testify in this trial? He did not. So what was their total case that they put on? They put on no case, Your Honor. Well, I mean, they rested on the prosecution's case. That's correct. To hold you to that, your burden. Okay, but no, they didn't call any witnesses. But the question of the admissibility, of course, could have been the subject of a hearing outside the presence of the jury or a motion in limine or, you know, that doesn't have to be. They can put on evidence respecting that without having to put it on at the trial. That's true, Your Honor, and I don't know if this is in the record. I think it might. But there was a motion to dismiss the underlying removal, 1326D motion, and an affidavit was submitted by the defendant for that, or a declaration. And in the declaration, what he said and what the court found, and I think she made a reference to it in this ruling, was that he did not remember the proceeding with this immigration officer. I don't think that's in the record. Okay. In any event, at the risk of asking you a leading question, would you agree that even if that second statement was wrongly omitted because it's so much overlap with what was in the first statement where the translator and administrator did testify that it would be harmless error at worst? Oh, absolutely, Your Honor. There was considerable overlap. The officer interpreter did testify, as we know, and I disagree with counsel's characterization of her testimony. In the record, at 162, he's cross-examined, and he's cross-examined about the signature line and how on the second page there was a place that was supposed to say, I have had the following so many pages read to me, and it was blank, and she was cross-examined about that. And the officer, she was asked, it's only through looking at your signature on the documents that, oh, sorry, I read the wrong part. On excerpt of record 161, she explains, she was asked, okay, and that's to certify or to signify that this entire form has been read by the individual or been read to them. The answer, actually, the one that says signature of alien is explaining that I've read everything to them. And then she continues, that particular line says, I've read or read to me the foregoing statements consisting of so many pages. That is usually self-populated from the computer. We have a system, and it auto-populates, and it did not at that particular time. Later on, she's answering another question. She says, she's asked, why isn't there a little signature mark on this box for corrections? She said, that's where the defendant would normally say, hey, you know what, no. So I read to him, after I list all the interpretations of what he has stated, then I read that, and then he says, okay. In other words, the interpretation from that is she did, in fact, testify that she reviewed everything in this file. She testified that she wrote down the answers verbatim, and moreover, she testified that she remembered this defendant, she remembered this interaction. So even if your honors were to hold that the 2013 and 2014 record disorder statement should be excluded, you still have her testimony in court, the defendant told me X, the defendant told me Y. As to one of the statements, because you don't have the person on one of the statements that the defendant told me, right? In terms of the, maybe I don't understand your question. Well, but the person that came in on both of the statements, one of them actually took the statement and the other one didn't, right? I mean, they didn't have two people come in for those statements. It was one person for both of them? For, I'm sorry, Your Honor, I'm not quite understanding. Well, the RSSs, right? Is that what you call them? The Recordist 1 statements. Yes. But, okay, the person that came in. Was for the 2013. The 2014 translator, questioner did not come in. Did not come in. So they have a slightly different posture relative to if it's hearsay. Yes. The 2014 would have to be admissible as an adoption. The 2013 should be admissible as an adoption, but even if the court doesn't find that, then it's just straight testimony of concerning statements by a party opponent. Let me ask you this. The issue of the jury instruction and when introducing A-files, that whether the proposal of a different instruction to say that the proceedings that are contained in the A-files have a different standard of proof, is that an issue that comes up in these trials all the time? Is it a standard request by defense counsel to give the preponderance, the lower burden for what happens in the A-file proceedings? I don't have a great answer in terms of percentage. It does come up from time to time. I'm just curious from the standpoint, because counsel said there wasn't a published case on that, and so I'm wondering if this comes up in every single trial, maybe the court should consider publishing.  I'm afraid that's the best answer I can give based on my experience. All right. Thank you. Turning to the jury instructions, if I could emphasize a few points. First, the argument and the brief concern of big focus of looking at the admission of an immigration judge's finding and his determination and his order. I would emphasize here that an immigration judge's order was not offered into evidence. The A-file custodian did not talk about an immigration judge's order. What was admitted into evidence were an administrative proceedings order and a reinstatement, and those don't have the title of a judicial officer on them. They have the title of a border patrol agent, and it was made clear in Officer Ortiz's testimony that the defendant was not presented to an immigration judge. So to the extent that there could be possible confusion about whether or not these were judicial findings, that's minimized here because that evidence wasn't introduced. And I really want to get around, before I run out of time, to the evidence in this case. The evidence in this case was not limited to the A-file documents. In fact, we could have put on this case without the A-file documents. The rest of our case was the circumstances of the arrest. It's documented in our report, but to briefly refresh your honors, this was in a remote location in Tecate, California, in the mountains. It's at 3 a.m. when an officer using an infrared scope spots a group of nine headed north, just past the border. And a border patrol agent responds, and the group scatters and runs away from him. And over the course of the next hour and a half, they're slowly found. So the evidence here, we relied on that tremendously because it's a very powerful set of facts to present to the jury. It's not just the mode of entry over the border, but it's also the other circumstances, the fact that the defendant ran away from the border patrol agents, the fact that he hid in brush, lying face down in the dirt for over an hour. All that powerfully spoke to his alienage. Beyond that, as we just discussed, you had Officer Ortiz testify about his statement, saying that he was born in Mexico, his parents were born in Mexico, he had no permission to be to you, be in the United States, and he'd been removed before. You also had his field statement to the officer, that he was a Mexican citizen, and that he hadn't been there before. And then for the removal, again, we don't even need to rely on the documents, we actually brought in the officer who removed him through Arizona ten days before he returned. So we really could have done without the documents altogether. They were helpful, but the most powerful bit of evidence from the documents wasn't the order of removal and it wasn't the findings. We didn't really rely on that and didn't argue that at all. It was the record of sworn statements, and then we covered that, that evidence was going to come in one way or another. Finally, I would emphasize that one reason the judge did not give the order, besides the fact that the immigration judge order wasn't entered into evidence, was she—the government asked to be able to argue the findings of the Border Patrol agents with response to this removal, and the court denied that request. She said you could not argue it, and because you can't argue it, I'm not going to give that instruction. All right. We don't appear to have any additional questions. Thank you, Your Honor. Thank you. Thank you. In regards to the record of sworn statements, the government's closing hinged heavily on that. That was the first thing they highlighted in their closing argument, was those two statements. Neither should have come in. The 2013 does not provide a significant indicia of reliability that Mr. Gutierrez adopted the statement. And secondly, even though the 2014 statement was basically a recitation of what was said earlier, Officer McCarthy did not testify at trial. So we would ask this court to adopt the reasoning of the Fifth Circuit in Daron Caldera, which I cited in my brief, and find that the admission of a record of sworn statement, also known as an affidavit, is a violation of the Confrontation Clause. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, N.R. Smith, Rakoff